UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PETER SLACK, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:18-cv-00899-GMN-BNW |
| vs. ) | |
| ) | **ORDER** |
| UNITED AIRLINES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant United Airlines, Inc.'s ("Defendant's") Motion for Summary Judgment, (ECF No. 71). Plaintiff Peter Slack ("Plaintiff"), appearing *pro se*, filed a Response,[1] (ECF No. 78), and Defendant filed a Reply, (ECF No. 79).

Also pending before the Court is Defendant's Motion to Strike Plaintiff's Surreply, (ECF No. 81). Plaintiff did not file a Response.

For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **GRANTS** Defendant's Motion to Strike.

**I.     BACKGROUND**

This case arises from Defendant terminating Plaintiff's employment. (Second Am. Compl. ("SAC") ¶ 60, ECF No. 29). Defendant terminated Plaintiff after conducting an internal investigation into Plaintiff for sexual harassment in the workplace. (*Id.* ¶¶ 34–62).

Defendant's internal investigation began on November 1, 2017, after members of Plaintiff's working group—specifically, Leona Lee and Markisha Jordan—accused Plaintiff of sexual harassment. (*Id.* ¶¶ 33, 34). Upon receiving those accusations, Defendant immediately

---

[1] In light of Plaintiff's status as a *pro se* litigant, the Court liberally construes his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

suspended Plaintiff with pay pending the outcome of the investigation. (*Id.* ¶ 35). As the investigation progressed, Plaintiff alleges that he provided his own evidence to combat the harassment allegations, alongside a statement from another of Defendant's employees stating that Plaintiff was neither a threat nor did he make the employee feel uncomfortable. (*Id.* ¶¶ 43–45, 52–55). Plaintiff similarly alleges that on December 14, 2017, as part of Defendant's internal investigation, Plaintiff explained to George Bieloszabski, Defendant's General Manager, and Sherida Derby, Assistant General Manager, that Defendant's workplace had a "pervasive culture of inappropriate, sexual, and harassing comments." (*Id.* ¶¶ 56–59). At that time, Plaintiff also "advised Mr. Bieloszabski and Ms. Derby that Ms. Lee is the employee who regularly made inappropriate comments involving sexual issues, and sexually harasses other employees frequently, including [Plaintiff]." (*Id.* ¶ 57). Moreover, Plaintiff reported co-workers Monique Willis, Jesus Sosa, and David Jimenez "for inappropriate sexual jokes and commentary to Defendant and, upon information and belief, Defendant did not take any action." (*Id.* ¶ 32).

Roughly two weeks after that December 14, 2017 discussion, Defendant terminated Plaintiff from his position. (*Id.* ¶ 60–65). Plaintiff subsequently tried to appeal his termination through Defendant's internal appellate procedures, but without success. (*Id.* ¶ 67–72).

On February 20, 2018, Plaintiff received a Right to Sue Letter from the United States Equal Employment Opportunity Commission ("EEOC"), in response to his filing of a Charge of Discrimination against Defendant. (*Id.* ¶ 4). On May 17, 2018, Plaintiff filed this action against Defendant. (Compl., ECF No. 1). Plaintiff alleges the following three claims for relief: (1) discrimination based on gender in violation of Nevada Revised Statute ("NRS") 613.330 *et. seq.* and 42 U.S.C. § 2000e *et. seq.* ("Title VII"); (2) retaliation in violation of 42 U.S.C. § 2000e-3 and NRS 613.340; and (3) violation of the Civil Rights Act of 1871, 42 U.S.C.

§ 1981. (*Id.* ¶¶ 74–106).[2] The instant Motion for Summary Judgment, (ECF No. 71), now follows.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

---

[2] Plaintiff voluntarily waived any claims for race, color, national origin, and/or age discrimination under Title VII and state law. (*See* Pl.'s Resp. at 5, ECF No. 12).

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at 249–50.

### B. Motion to Strike

The Court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion. *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).  However, federal courts disfavor motions under Rule 12(f) and generally view them as a drastic remedy. *See, e.g., Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012); *Mag Instrument, Inc. v. JS Products Inc.*, 595 F. Supp. 2d 1102, 1006 (C.D. Cal. 2008); *Sorenson v. Countrywide Home Loans, Inc.*, 2010 WL 308794, at *2 (E.D. Cal. Jan. 12, 2010).  "If the court is in doubt as to whether challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits." *Sliger v. Prospect Mortg.*, LLC, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (citing *Whittlestone, Inc. v. HandiCraft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### III. DISCUSSION

Defendant moves for summary judgment on all three of Plaintiff's claims in his Amended Complaint: (1) sex discrimination; (2) retaliation; and (3) violation of Civil Rights Act of 1871. (Def.'s Mot. Summ. J. 1:19–22, ECF No. 71). Defendant asserts that there is no genuine dispute as to any material fact and therefore, Defendant is entitled to judgment as a matter of law on each claim. (*Id.* 1:22–23). The Court addresses each claim in turn.

**A. Sex Discrimination**

Plaintiff's first claim concerns sex discrimination in violation of Title VII and NRS 613.330 *et seq*. (SAC ¶¶ 74–88). Plaintiff alleges that Defendant discriminated against him on the basis of sex when Defendant terminated Plaintiff for being falsely accused of sexual harassment. (SAC ¶ 78). As a preliminary matter, the Court addresses whether Plaintiff's first claim includes a gender disparate treatment claim and/or a gender harassment claim. Defendant addresses both claims in its Motion, asserting that "Plaintiff's Second Amended Complaint is ambiguous as to whether Plaintiff is alleging a gender disparate treatment claim and/or gender sexual harassment claim." (Def.'s Mot. Summ. J. 11:4–6). Plaintiff, in response, asserts that he "did not have a cause of action on sexual harassment" but nevertheless addresses a gender harassment claim because Defendant addresses it in its Motion. (Pl.'s Resp. 19:10–13, ECF No. 78). Because Plaintiff acknowledges that his gender discrimination claim does not include a sexual harassment claim, the Court accordingly limits its discussion to a gender disparate treatment claim.

To state a *prima facie* claim of disparate treatment based on sex, the movant must demonstrate: (1) he belonged to a protected class; (2) he was qualified and satisfactorily performed his job; (3) he experienced an adverse employment action; and (4) similarly situated employees outside of his protected class were "treated more favorably, or [that] other circumstances surrounding the adverse employment action give rise to an inference of

1 discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010)

2 (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)); *see Stewart v.*

3 *SBE Entm't Grp., LLC*, 239 F. Supp. 3d 1235, 1246 n.61 (D. Nev. 2017) (explaining that a

4 discrimination claim under NRS 613.330 proceeds under the same analysis as that of a Title

5 VII claim); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005).

6       As to Plaintiff's sex discrimination claim, Defendant argues that "Plaintiff cannot

7 establish a *prima facie* case of gender discrimination because he cannot show that similarly

8 situated individuals outside his protected category were treated more favorably or that he was

9 performing his job satisfactorily." (Def.'s Mot. Summ. J. 12:1–3). The Court discusses each

10 element in turn.

### i. Satisfactory Job Performance

12       Defendant asserts that Plaintiff cannot demonstrate satisfactory job performance given

13 that he sexually harassed his coworkers. (Def.'s Mot. Summ. J. 13:5–12). Plaintiff, in

14 response, argues that he was qualified for the job given that he has a high school diploma and

15 otherwise, had no performance or negative issues at the time of the incident. (Pl.'s Resp. 17:24,

16 18:15–16). Because Defendant does not dispute that Plaintiff is qualified for the job, the Court

17 accordingly discusses whether there is a genuine dispute of material fact as to Plaintiff's job

18 performance.

19       To establish the second element of the *prima facie* case, a plaintiff "need only produce

20 substantial evidence of satisfactory job performance sufficient to create a jury question on this

21 issue." *Douglas v. Anderson*, 656 F.2d 528, 533 n.5 (9th Cir. 1981). Courts have held that

22 meeting this element does not require "a flawless personnel file at all times during

23 employment." *Bahri v. Home Depot USA, Inc.*, 242 F. Supp. 2d 922, 931 (D. Or. 2002);

24 *Johnson v. W. Hotel & Casino*, No. 2:10-CV-01590-PMP, 2011 WL 4963039, at *5 (D. Nev.

25 Oct. 19, 2011). "[T]he second element of the *prima facie* case makes sense only when it is

1  limited to the time period prior to the introduction of the alleged unlawful discrimination."
2  *Bahri*, 242 F. Supp. 2d at 931.

3  Here, genuine issues of fact remain as to whether Plaintiff performed his job
4  satisfactorily. Defendant contends that the complaints by Leona Lee, Markisha Jordan, and
5  Brandi Moore for years demonstrate that Plaintiff did not perform his job satisfactorily. Lee
6  states, in her Declaration, that Plaintiff made inappropriate comments about her body beginning
7  in 2013. (*See* Leona Lee's Decl. ¶ 6, 12, Ex. E to Def.'s Mot. Summ. J., ECF No. 71-6).
8  Plaintiff, in response, provides evidence that he had no performance or other negative issues at
9  the time of the incident. To support this claim, Plaintiff points to notes taken at the
10 Investigative Review Meeting ("IRM") on December 14, 2017. (*See* Julie Liu's Notes from
11 IRM at 3, Ex. U. to Pl.'s Resp., ECF No. 78). At the meeting, Sherida Derby, Assistant
12 General Manager, stated that the company reviewed Plaintiff's employee file and found no
13 previous reports of disciplinary action other than "two lates [sic] to assignments/dependability."
14 (*Id.*). Derby further stated that she did not find other instances of the investigated reports in
15 Plaintiff's employee file. (*Id.*). The Union affirmed this statement, acknowledging that
16 Plaintiff's "work record is clean, [Plaintiff] upgrades as needed and has respect of his peers."
17 (*Id.*). Taken together, Plaintiff provides sufficient factual support to demonstrate that he
18 satisfactorily performed his job. *See Swan v. Bank of Am. Corp.*, No. 207-CV-00217-PMP-
19 LRL, 2008 WL 2859066, at *5 (D. Nev. July 22, 2008) ("An employer's production of
20 significant rebuttal evidence does not necessarily preclude a finding that the Plaintiff met her
21 burden of producing substantial evidence satisfactory job performance for the purposes of her
22 *prima facie* case.") Accordingly, Plaintiff meets his burden in producing substantial evidence
23 of satisfactory job performance.
24 //
25 //

### ii. Similarly Situated Employees Outside Protected Class

Defendant asserts that Plaintiff cannot establish the fourth element of a *prima facie* case because Plaintiff cannot point to other similarly situated employees outside his protected class with sexual harassment complaints who were treated differently than Plaintiff. (Def.'s Mot. Summ. J. 12:13–16). Plaintiff, in response, points to Lee, Jordan, and Willis, arguing that they were similarly situated female employees who "were treated more favorably than . . . [P]laintiff" because none were suspended, investigated, or terminated even though Plaintiff alleged at the IRM that Lee and Jordan harassed him and other employees. (Pl.'s Resp. 18:23–24).

"[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). "The employees need not be identical; they must simply be similar 'in all material respects.'" *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). In analyzing whether the employees were "similarly situated," the Ninth Circuit in *Vasquez* considered a number of factors including: (1) whether the employees were involved in the same offense; (2) whether the employees held the same position in the company; and (3) whether they engaged in problematic conduct of comparable seriousness to the plaintiff. *Vazquez*, 349 F.3d at 641.

Plaintiff argues that because Plaintiff alleged that Lee and Jordan also sexual harassed him and other employees at the IRM, Lee and Jordan are also similarly situated to Plaintiff. (Pl.'s Resp. 18:23–25). The Ninth Circuit addressed this exact argument in *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1160 (9th Cir. 2010). Like Plaintiff, the plaintiffs in *Hawn* argued that the female flight attendants were similarly situated because they engaged in similar conduct; however, were not terminated because they were females. *Id.* The Ninth Circuit, however, distinguished the plaintiffs in that case from the female employees because "plaintiffs' conduct gave rise to a complaint of sexual harassment, while the [other similarly

situated employees'] alleged conduct did not." *Id.* at 1160.   The plaintiffs never complained of discriminatory treatment prior to the company's investigations into the allegations of sexual harassment and only reported allegations defensively, in the context of the company's allegations. *Id.* at 1160.  Accordingly, because the "plaintiffs' conduct was the subject of a complaint . . . while the conduct of the other female [employees] was not," the Ninth Circuit determined that the plaintiffs were not similarly situated to the female employees. *Id.* at 1161.

Like the plaintiffs in *Hawn*, Plaintiff here reported misconduct "defensively in the context of the company's investigations" into Lee and Jordan's accusations. *Id.*  Indeed, "even in the context of the company's investigations, [Plaintiff] did not lodge a complaint at any time." *Id.*  Plaintiff admits in his deposition that he first reported allegations against Lee at the IRM, after he was suspended from work. (Peter Slack's Depo., Ex. B to Def.'s Mot. Summ. J., ECF No. 71-2).  George Bieloszabski, the Hearing Officer for the IRM, also stated that he "did not become aware of any allegation or complaint by Mr. Slack that he was being subject to harassment or discrimination until after he was suspended without pay and during the IRM." (George Bieloszabaski's Decl. ¶ 9, Ex. L to Def.'s Mot. Summ. J., ECF No. 71-12).  Indeed, there is no proffered evidence that Plaintiff and/or other employees lodged formal complaints against Lee and Jordan. (*See* SAC ¶ 18, 22) ("upon information and belief, Ms. Lee did not receive any disciplinary actions for said behavior.").  Lee, Jordan, and Plaintiff, therefore, do not appear to be similarly situated because they did not engage in comparable conduct.  Because Plaintiff merely provides vague and conclusory statements to demonstrate that Lee, Jordan, and Moore are similarly situated and Plaintiff's reasoning fails as a matter of law, the Court accordingly finds that Plaintiff fails to establish a *prima facie* case of sex discrimination.

//

//

### iii. Pretext

Even assuming Plaintiff met his burden of establishing a *prima facie* case of sex discrimination, Plaintiff fails to offer specific and substantial evidence to rebut Defendant's explanation for its termination: that Defendant terminated Plaintiff due to allegations of sexual harassment. "In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce 'specific, substantial evidence of pretext.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983)). "The plaintiff 'must tender a genuine issue of material fact as to pretext in order to avoid summary judgment.'" *Id*.

The record shows that Defendant terminated Plaintiff for violating "the United Airlines Policies regarding Sexual Harassment in the workplace and . . . the IAM collective bargaining Agreement par.2-Unwelcomed sexual advances and proposition." (Termination Letter at 4, Ex. P to Def.'s Mot. Summ. J., ECF No. 71-16). This decision was made pursuant to the IRM, where Defendant investigated assertions concerning Plaintiff's behavior based on allegations and accusations brought forward from Lee. (*Id*. at 2). The results of the meeting demonstrated that Plaintiff interacted with Lee on multiple occasions and that Plaintiff's exchange with employees mentioned was "egregious and unacceptable." (*Id*. at 3). Defendant, therefore, provides a sufficient, non-discriminatory reason for termination.

Plaintiff, in response, fails to produce any specific evidence of pretext. Plaintiff asserts that "the fact that the defendant did not investigate the false allegations against the plaintiff, but claimed he would interview the witnesses, then lied and did not interview anyone is evidence of a pretext and inconsistent actions." (Pl.'s Resp. 19:1–4). Plaintiff, however, fails to provide any factual support for this assertion. Plaintiff only states that "defendants' proffered reason is a 'cover-up' for the Defendants Discriminating and retaliatory actions against the plaintiff." (*Id*. 19:3–4). He, however, fails to explain why there is evidence of a cover-up or otherwise,

provide any evidence to support a showing of pretext. As explained above, conclusory allegations are insufficient to demonstrate a "triable issue of fact" at the summary judgment stage. *See Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) ("Conclusory allegations unsupported by factual data will not create a triable issue of fact."). Even if these assertions were supported by the record, neither gives rise to an inference that Plaintiff was targeted in his termination based on his gender nor show that Defendant's explanation is not credible. Plaintiff simply does not provide additional proof of sex discrimination either direct or circumstantial. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994). Accordingly, because Plaintiff fails to present evidence to rebut Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff, Defendant is therefore entitled to summary judgment on Plaintiff's first claim of sex discrimination.

**B. Retaliation**

Plaintiff's second claim concerns retaliation in violation of 42 U.S.C. § 2000e-3 and NRS 613.340. (SAC ¶¶ 89-97). Title VII prohibits an employer from retaliating against an employee who opposes unlawful employment acts. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). To establish a *prima facie* case for retaliation under Title VII, an employee must show (1) that he engaged in a protected activity, (2) he subsequently experienced an adverse employment action, and (3) a causal link exists between the two. *Id*.

Defendant argues that Plaintiff can establish neither the first nor third elements of a *prima facie* case and further fails to demonstrate pretext. (Def.'s Mot. Summ. J. 16:4–6). Specifically, Defendant argues that Plaintiff did not engage in protected activity and that Plaintiff cannot establish that he would not have been terminated but for the alleged protected activity. (*Id*. 16:7–19:2). The Court discusses each argument in turn.

//
//

### i. Protected Activity

Plaintiff asserts that his verbal and written opposition to the discriminatory workplace culture at the IRM was a protected activity under Title VII. (Pl.'s Resp. 21:1–4). Defendant contends that "Plaintiff's vague hostile work environment allegation made for the first time at the IRM . . . is not protected activity pursuant to Title VII." (Def.'s Reply 10:20–21, ECF No. 79). Defendant seemingly argues that Plaintiff's opposition to the discriminatory workplace culture is not protected activity because Plaintiff fails to demonstrate that Defendant engaged in unlawful employer practices or even knew of the hostile work environment in the workplace. (*Id.* 10:17–24).[3]

Under Title VII, an employee has engaged in a protected act if he (1) has opposed any practice made an unlawful employment practice; or (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. *See* 42 U.S.C. ¶ 2000e-3(a); *Sias v. City Demonstration Agency*, 588 F.2d 692, 694 (9th Cir. 1978) (noting that "this section contains two different clauses known, respectively, as the 'participation' and the 'opposition' clause"). The Ninth Circuit, in *E.E.O.C. v. Crown Zellerbach Corp.*, held that "[t]he employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to some practice by the employer that is allegedly unlawful." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). The Ninth Circuit further determined:

> It is not necessary, however, that the practice be demonstrably unlawful; opposition clause protection will be accorded whenever the opposition is based on a "reasonable belief" that the employer has engaged in an unlawful employment practice. But a simple assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an "unlawful employment practice."

---

[3] Defendant also argues that the "participation clause" for retaliation under Title VII does not apply because "Defendant conducted an internal investigation into complaints made by female employees." (Def.'s Mot. Summ. J. 16:15–17). Plaintiff does not dispute this point in his Response. (*See* Pl.'s Resp. 20:16) ("Plaintiff provides allegations that can support retaliation under the opposition clause.").

*Id.* (citations omitted); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) ("When an employee reasonably believes that discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts."). There, the Ninth Circuit determined that a letter stating that "racism" and "discrimination" were prevalent at the company constituted "protected activity" under a Title VII claim. *Id*.

While Plaintiff's opposition was a protest of the allegedly discriminatory workplace culture, Plaintiff's opposition consisted of mere allegations. *See E.E.O.C.*, 720 F.2d at 1013 (9th Cir. 1983) ("[a] simple assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an "unlawful employment practice"). Plaintiff states that "during Defendant's internal investigation, he voiced concerns to Defendant's General Manger [sic] and Assistant General Manager about a culture of sexual harassment within Defendant's business, which Plaintiff believed was discriminatory." (Pl.'s Resp. 20:16–19). Plaintiff additionally alleged at the IRM, that "individuals [engaged] in sexually harassing behavior, which diminished the employment atmosphere." (*Id*. 20:19–22). There is no indication that Plaintiff supported his opposition with factual support of the allegedly unlawful and discriminatory workplace. Indeed, Plaintiff does not provide further evidence demonstrating that his opposition at the IRM was based on a "reasonable belief" that the workplace was pervasive and unlawful. *Cf. E.E.O.C.*, 720 F.2d at 1013 (finding that the letter was protected activity under Title VII because the letter "specifically mentioned the history of unlawful employment practice charges" and stressed a "continuing series of unlawful discriminatory employment practices."). Without further specifics, the Court cannot find that Plaintiff's opposition is statutorily protected opposition to an unlawful employment practice under Title VII. Plaintiff, accordingly, fails to demonstrate sufficient evidence to support a potential

finding that he engaged in protected activity when he opposed the discriminatory workplace culture during the IRM.[4]

### ii. Causation

Defendant further argues that Plaintiff fails to demonstrate but-for causation between the alleged protected activity and his termination. (Def.'s Mot. Summ. J. 18:1–19:2). Specifically, Defendant argues that Plaintiff's alleged protected activity—his opposition to the discriminatory workplace culture—occurred after Plaintiff was suspended pending the investigation into complaints of sexual harassment against him. (*Id*. 18:11–20). Plaintiff, in response, alleges that the narrow proximity in time supports Plaintiff's retaliation claim. (Pl.'s Resp. 22:5–6). Specifically, Plaintiff contends that Defendant terminated Plaintiff approximately fifteen (15) days after his primary complaints about the discriminatory culture in the workplace, which thereby provides the causal link to the retaliation action. (*Id*. 21:21–22:11).

"The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d at 936. "[P]roximity in time between the protected action and the allegedly retaliatory employment decision [i]s one [way] a jury logically could infer [that the plaintiff] was terminated in retaliation." *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001). Courts have held that "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000); *Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989).

---

[4] Defendant cites to a string of Sixth Circuit cases, arguing that Plaintiff's opposition at the IRM is not protected activity because Plaintiff alleged vague harassment. (*See* Def.'s Mot. Summ. J. 17:1–16). These Sixth Circuit cases, however, are not binding on this Court. The Court accordingly cannot and does not rely on these cases.

Here, Defendant's decision to terminate Plaintiff occurred fifteen days after Plaintiff's alleged protected activity—his opposition to Defendant's workplace and culture. Defendant asserts that Plaintiff cannot rely on temporal proximity alone to establish the causal link between his alleged protected activity and his termination. (Def.'s Reply 11:12–14). The Ninth Circuit, however, has determined, however, that "temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the *prima facie* case and the showing of pretext." *Bell v. Clackamas Cty.*, 341 F.3d 858, 865–66 (9th Cir. 2003). Here, Plaintiff's alleged protected activity—opposition of the company's pervasive culture at the IRM—occurred fifteen (15) days before his eventual termination.[5] Plaintiff, therefore, has met his burden, at the summary judgment stage, in demonstrating a causal link between the alleged protected activity and his termination.

### iii. Pretext

Even assuming Plaintiff met his burden of establishing a *prima facie* case of retaliation, Plaintiff fails to offer specific and substantial evidence to rebut Defendant's explanation for its termination. As explained above, Defendant articulates a legitimate, non-retaliatory reason for the alleged adverse employment actions at issue—namely that Defendant terminated Plaintiff after a thorough internal investigation of the multiple sexual harassment claims lodged against Defendant by other female employees. (Def.'s Mot. Summ. J. 19:4–9). As to this specific claim of retaliation, Plaintiff alleges that Defendant's non-retaliatory reason is a "cover-up" and pretext to hide the sexually pervasive culture allowed by management. (Pl.'s Resp. 22:23–26). Plaintiff further states that "[t]he defendants' lies and inconsistent actions provide sufficient inference and pretext that the plaintiff was discriminated and retaliated against by United Airlines, the Defendant." (*Id.* 22:26–28). These assertions, however, are bare allegations that

---

[5] Plaintiff's investigatory review meeting was held on December 14, 2017 and Defendant's Termination Letter to Plaintiff is dated December 29, 2017. (*See* Termination Letter, Ex. P to Def.'s Mot. Summ. J., ECF No. 71-16).

are neither supported by factual evidence nor specific information. Additionally, as Defendant points out, Plaintiff admits that Defendant terminated him because of the sexual harassment complaints. (*See* EEOC Charge, Ex. R to Def.'s Mot. Summ. J., ECF No. 71-18). This fact proves fatal to Plaintiff's case. Plaintiff does not address this point in his Response. Accordingly, because Plaintiff fails to meet his burden in rebutting Defendant's non-discriminatory reason for termination, the Court grants Defendant summary judgment as to Plaintiff's second claim.

**C. Race Discrimination**

Plaintiff's third claim concerns race discrimination in violation of § 1981. (SAC ¶¶ 98–106). To establish a *prima facie* case of employment discrimination under § 1981, a plaintiff must present evidence showing: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011); *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1105–06 (9th Cir. 2008).

Defendant argues that Plaintiff fails to meet his burden in demonstrating a *prima facie* case of race discrimination because Plaintiff fails to allege specific facts that support an inference of discrimination on account of his race. (Def.'s Mot. Summ. J. 19: 12–13). Plaintiff contends that "similarly situated employees outside his protected class—African-American—were treated more favorably." (Pl.'s Resp. 23:18–19). Specifically, Plaintiff points to Jesus Sosa and David Jimenez, Hispanic males who worked as customer service agents and allegedly made inappropriate commentary while working for Defendant. (*Id*. 23:20–27). Plaintiff argues that Defendant failed to take any action against Sosa and Jimenez even after Plaintiff reported Sosa and Jimenez for inappropriate sexual jokes and commentary. (*Id*. 23:23–25).

Plaintiff, however, fails to support this assertion with specific evidence or exhibits. At the summary judgment stage, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor*, 880 F.2d at 1045. Here, Plaintiff makes conclusory statements without providing evidence that there remains a genuine dispute of material fact as to Plaintiff's race discrimination claim. In the Second Amended Complaint, Plaintiff broadly asserts that "Defendant engaged in the above-mentioned discrimination and termination of Mr. Slack with the purposeful intent to discriminate against Mr. Slack because of his race (African American)." (SAC ¶ 100). Even if the Court were to accept Plaintiff's unsupported allegations as evidence, Plaintiff addresses only one of the factors for a prima facie case—that similarly situated individuals outside his protected class were treated more favorably. Plaintiff, however, fails to show how Sosa and Jimenez are similarly situated to Plaintiff other than the one similarity that Sosa and Jimenez were also accused of sexual harassment in the workplace. It is unclear what positions Sosa and Jimenez hold and further, whether the informal allegations turned into formal complaints documented by Defendant. Not only does Plaintiff fail to address this factor with specificity, but Plaintiff additionally fails to address the other factors to demonstrate a *prima facie* case of discrimination on account of race. Plaintiff therefore fails to meet his burden in demonstrating with specific evidence that a *prima facie* case of race discrimination exists.[6] Accordingly, the Court grants summary judgment as to Plaintiff's third claim.

//

//

---

[6] Even if Plaintiff could establish a *prima facie* claim of race discrimination, Plaintiff would still fail to meet its burden in demonstrating pretext for the reasons described above.

**D. Motion to Strike, (ECF No. 81)**

Defendant requests the Court strike Plaintiff's Motion titled, "Plaintiff's Response in Opposition to Defendant's Reply in Support of its Motion for Summary Judgment" filed on November 10, 2020. (Def.'s Mot. Strike 2:12–27, ECF No. 81). Because Plaintiff failed to seek leave to file the surreply, Defendant argues that the Court should strike the surreply as a fugitive document under Local Rule 7-2(b). (*Id*. 2:16–17).

"Under Rule 12(f), a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, Case No. 2:12-CV-00560-MMD, 2014 WL 1305144, at *6 (D. Nev. Mar. 31, 2014). "Motions to strike apply only to pleadings, and courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto." *Id*. (citation omitted) (denying motion to strike declarations submitted in support of summary judgment motions). The Court, however, has "inherent power to strike a party's submissions other than pleadings." *Mazzeo v. Gibbons*, No. 2:08-CV-01387-RLH-PA, 2010 WL 3910072, at *3 (D. Nev. Sept. 30, 2010).

Here, Plaintiff filed a "Response in Opposition to Defendant's Reply," which the Court broadly construes as a Motion to File a Surreply. (*See generally* Pl.'s Surreply, ECF No. 80). Under Local Rule 7-2(b), "[s]urreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged." *See* D. Nev. L.R. 7-2(b). Here, Plaintiff failed to obtain leave of court prior to filing his surreply and otherwise fails to explain the need for a surreply in his case. Plaintiff, in his Surreply, attempts to address Defendant's arguments raised in its Reply, arguing that "Defendant's Reply does not address the layered cover-ups of United Airlines' unlawful discriminatory and retaliatory actions that harmed the Plaintiff." (Pl.'s Surreply at 1); *see also Kanvick v. City of Reno*, No. 3:06–CV–00058, 2008 WL 873085, at *1, n.1 (D. Nev. March 27, 2008) ("A sur-reply may only be filed by leave of court, and

only to address new matters raised in a reply to which a party would otherwise be unable to respond."). Because Plaintiff failed to obtain leave prior to filing his Surreply and otherwise, fails to allege a valid reason to grant leave, the Court thus grants Defendant's Motion to Strike Plaintiff's Surreply.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 71), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, (ECF No. 81), is **GRANTED**.

The Clerk of Court is ordered to close the case and enter judgment accordingly.

**DATED** this __15__ day of March, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court